TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

---------------------------------------------------------------------------------------

FROM: 10579062
TO: Dolphin, Michael; Johnson, Bill
SUBJECT: Cons brief1 -- MSSD and OKND
DATE: 05/21/2026 10:17:09 AM

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

**MAY 26 2026**

ARTHUR JOHNSTON
BY                DEPUTY

\*    IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

OSCAR STILLEY                                              PETITIONER

V.          CASE NUMBER 3:26-CV-145-HTW-LGI

WARDEN R. KEYES, ET AL                        RESPONDENTS

CONSOLIDATED BRIEF IN SUPPORT OF CONTEMPORANEOUSLY FILED PLEADINGS IN MSSD AND OKND

Comes now Petitioner Oscar Stilley (Stilley) and for his consolidated brief states:

This brief is being filed verbatim in support of pleadings in two separate US District Courts, specifically the Southern District of Mississippi, Northern Division (MSSD) (3:26-CV--145-HTW-LGI, a petition under 28 USC 2241) and the Northern District of Oklahoma (OKND) (4:09-CR-43-SEH, a criminal case; 4:25-CV-673, a petition under 28 USC 2255).

I.    BACKGROUND

Since this is an unorthodox protocol for the filing of a consolidated brief, please consider this explanation. Stilley's 2241 petition in the MSSD seeks enforcement of First Step Act of 2018 (FSA) home confinement, admitted by the US Department of Justice-Federal Bureau of Prisons (DOJ-FBOP) to be earned and long past due. In other words, Stilley has long ago earned more than enough FSA "time credits" to allow him to spend the rest of his incarceration in home confinement. Nobody questions Stilley's entitlement to IMMEDIATE RELEASE to home confinement. The only question, in the 5th Circuit, is whether he has a legal path to vindicate his legal rights.

A. 2255 litigation

Stilley on 12-15-2025 filed a petition under 28 USC 2255 in the OKND litigation. Thus the criminal and civil case numbers, since the pleadings are filed into the criminal case on CM/ECF, but a civil case is open and a civil case number has been assigned. In the first batch of pleadings Stilley filed:

| Dkt. # | Description |
|---|---|
| 1)  846 | Motion to Vacate/Set Aside/Correct Sentence under 28 USC 2255 |
| 2)  848 | Motion for Release Pending 2255 Proceedings |
| 3)  849 | Motion for Show Cause Order, to Show Why Opposing Counsel Should Not Be Disqualified |
| 4)  850 | Motion for Scheduling Order |
| 5)  851 | Brief in Support of Motion 848 for Release Pending 2255 Proceedings |

Docket #847 was the customary minute order excusing the government from responding unless and until so ordered by the Court.

After nothing but "crickets" for over 2 months, Stilley filed the following additional pleadings, all of which were entered 2-24-2026:

| | | |
|---|---|---|
| 6) | 852 | Motion to Compel the Government to Comply with Brady/Giglio/Napue/Glossip |
| 7) | 853 | Motion to Compel the Government to Accept Donations Necessary for Due Process, and Access to Internet Service for Legal Purposes |
| 8) | 854 | Motion for Conduct of Litigation -- But Which Stilley Actually Entitled, Verbatim: STILLEY'S MOTION FOR "PROMPT" CONDUCT OF LITIGATION, AND DETERMINATION OF THE MEANING OF THE WORD, WITH INCLUDED BRIEF |
| 9) | 855 | Consolidated Brief in support of 852 and 853 |

*1*

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

-------------------------------------------------------------------------------------------------

Almost 5 months after the 2255 petition, and some 3 months after the second batch of pleadings, there is only one court order subsequent to the technical minute order entered the date of the 2255 petition. That is an order denying Stilley's motion for order compelling his access to salt during a hunger strike, without prejudice to a refiling.

For the information of both courts and other interested parties, Health Services at FCC Yazoo City during Stilley's recent 37 day hunger strike ordered that Stilley be offered a salty broth. Stilley believes this to be at least DE FACTO current policy for hunger strikers. Without controversy, Health Services enforced their mandate when Food Service unilaterally decided to cut it off. Health Services intervened and compelled Food Service to resume the offer of salty broth. As a result, Stilley maintained healthy levels of electrolytes in his blood for the duration of his 37 day hunger strike commenced 3-10-2026.

Without controversy, both 28 USC 2255, et seq., and 28 USC 2241, et seq., relate primarily to attempts to regain liberty that has been denied contrary to the constitution, statutes, or treaties of the United States. Neither are considered proper means to seek money damages.

Stilley's 2241 petition was entered 3-5-2026, less than a week before Stilley commenced his hunger strike. Almost 2 months later, on 4-29-2026, Judge Henry T. Wingate entered a SUA SPONTE order dismissing the action, on the basis of Rule 4 of the RULES GOVERNING 2254 CASES. That rule, which can also apply to 2241 actions, (Petitioner concedes as much in this action) authorizes a SUA SPONTE dismissal if it appears from the face of the 2241 petition that petitioner is not entitled to relief.

Judge Wingate is in error with respect to the conclusion that "...transfer to halfway house or home confinement is not available in a habeas corpus petition." Petitioner will prove this beyond peradventure later in this brief, but first will discuss his 2255 petition.

Stilley's 2255 petition is necessarily focused on liberty, BUT stonewalling a 2255 petitioner until he or she gets out of prison does not NECESSARILY moot the action. In the present circumstances, Stilley's 2255 petition NECESSARILY cannot be mooted by delay. Stilley faces a felony perjury charge for having registered to vote in Crawford County, Arkansas, where he lives.

### B.   Stilley's Litigation Regarding the Arkansas Abortion Amendment of 2024

Stilley registered to vote because the then Arkansas Secretary of State, John Thurston, publicly claimed that he'd found a way to cheat the sponsors of the Arkansas Abortion Amendment of 2024 out of a count of the valid signatures on their petition. Stilley registered to vote the very day he read that news story, because only registered voters are allowed to file an original action petition challenging the Secretary of State's approval or disapproval of a proposed initiative constitutional amendment.

Stilley on that voter registration denied that he had been lawfully convicted of a felony by a lawful court, the sentence of which had not been fully discharged. Stilley relies on the exact words on the form, and the exact words that he wrote on the face of the form, modifying his allegations in support of voter registration.

2

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

--------------------------------------------------------------------------------

FROM: 10579062
TO: Dolphin, Michael; Johnson, Bill
SUBJECT: Cons brief 2 -- MSSD and OKND
DATE: 05/21/2026 10:17:31 AM

Stilley hurried back to his house where he worked feverishly to prepare his original action petition challenging the actions of Secretary Thurston. He sent it FedEx overnight priority for morning delivery. His petition, Arkansas Supreme Court #24-453, was filed just before the petition of the official sponsors of the initiative petition, numbered 24-455. The docket and docket items for both cases are available online at the Arkansas Supreme Court's online docket. Stilley has more user friendly materials available elsewhere, but is denied access to those materials and thus can't cite them or provide URLs.

Stilley litigated parallel to the official sponsors of the proposed amendment, with similar but not identical claims. The Arkansas Secretary of State deployed five of the finest attorneys in the Arkansas Attorney General's Office to attack Stilley's theories and also his voter registration, since that was the "keys to the courthouse door." Stilley was ordered to deposit $5,000 to pay the costs of a Special Master, charged with determining whether or not Stilley was a lawfully registered voter. The Special Master expertly marched right up to the question, acknowledging that Stilley vigorously contested the allegation that his voter registration was unlawful -- but then failed to decide the question.

Stilley filed motions to suppress the original criminal judgment in OKND 4:09-cr-43, as well as the first revocation judgment. The five illustrious lawyers defaulted on both of those motions -- but that wasn't enough for Stilley to get a ruling on either of them at the Arkansas Supreme Court. Stilley furthermore served discovery including requests for admission that would have compelled Secretary Thurston to admit the ultimate question, that BOTH of those criminal judgments were illegal and VOID.

Those admissions would have been "deemed admitted" if not denied within 30 days. During this 30 day period, the Court denied the amendment sponsors' petition in a 4-3 decision. Stilley filed a motion to compel Secretary Thurston to leave the popular name and ballot title on the soon-to-be-printed ballots pending a decision on Stilley's claims not expressly or impliedly decided in the rejection of the initiative sponsors' petition. Stilley's undecided claims were litigated on a compressed time frame, in which briefing times were measured in hours rather than days. The Arkansas Supreme Court denied Stilley's independent claims along the same 4-3 lines by which the sponsors' claims were denied.

This would seem to eliminate any need for haste, since the initiative petition was no longer in play, save and except for the petition to for certiorari to the US Supreme Court, which Stilley would later file, and which the US Supreme Court would later deny.

However, on the 30th day of the time to respond to discovery, the Arkansas Supreme Court issued a PER CURIAM decision dismissing Stilley's petition. No decision was made on his motions to suppress his criminal judgments, defaulted by the best lawyers the Arkansas Attorney General had to offer. The requests for admission thus evaporated -- on the very day before they would have been ADMITTED BY OPERATION OF LAW.

That's not the half of it. The Arkansas Supreme Court referred Stilley for prosecution, sending a letter to the Crawford County Prosecutor to that effect. They also sent a letter to the County Clerk of Crawford County, Arkansas, suggesting that she might consider revocation or nullification of his voter registration.

Stilley promptly visited the Sheriff's office and the Prosecutor's office, advising them of the Supreme Court's letter and referral. Stilley assured both offices that self-surrender could be had by way of a call to his cell phone, with instructions about whether Stilley needed to bring a driver, to get his car home. Nothing of the sort happened. About two weeks later, three carloads of officials paid a surprise visit to Stilley's house, to take him into custody and put him in county Jail.

Stilley's felony perjury charges remain pending. If Stilley's criminal convictions are not "lawful" convictions by a "lawful" court, then Stilley most certainly didn't commit perjury on any voter registration form. That question will not be rendered moot by "running the clock" on Stilley.

The County Clerk, who apparently is not very enthused about unrighteous causes against political dissidents, filed nothing, didn't attempt to revoke the voter registration, and was quite pleasant and accommodating when Stilley visited her office to discuss the Arkansas Supreme Court's referral letter.

Of course, a fervent desire to consign a political dissident to a concrete box isn't enough to put him there, under the United States Constitution. That must be done by formal charges, a jury trial, and a lawful judgment. Likewise, a County Clerk cannot simply unilaterally and without notice revoke a voter registration. Furthermore, Stilley has no reason to believe that the Crawford

*193*

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

-----------------------------------------------------------------------------------------------

County Clerk would engage in any devious schemes to deprive Stilley of due process. On the contrary, he remains quite confident that she would do her best to ensure that Stilley received that fundamental essence of due process, formal notice and the right to be heard in a meaningful time and a meaningful manner.

Stilley bonded out of jail and remains on bond, in good standing, to this day. He maintains contact with the appropriate personnel of the bonding company. He has sought and received continuances from the Circuit Court, and otherwise complied with all conditions of the bond.

During the videoconference bond hearing from the jail, the prosecutors said that US Probation had advised them that Stilley's supervised release might be the subject of a petition to revoke. A petition to revoke was filed and served soon after Stilley's release from jail on bond.

Stilley has zero access to Arkansas law. As soon as Stilley gets to halfway house or home confinement, Stilley will be able to do the necessary research to determine the best cause or causes of action to establish the lawfulness of his voter registration. He'll be able to file and serve the proper pleadings, and propound discovery papers including the essence of the discovery requests the Arkansas Attorney General dodged.

At that point in time, there will be no more "saved by the bell." Furthermore, there is no reason to believe that the County Clerk is a liar like unto Stilley's political enemies who caused him to get this latest 2 year "revocation" sentence. Lying would be extremely dangerous and disadvantageous for her. There is every reason to believe that she will tell the truth in response to discovery requests.

Does that shed light on the refusals to decide Stilley's 2255 and 2241 petitions? It doesn't matter which one Stilley wins first. He's going to win one, then the other -- and then, he's going to RUN THE TABLE!!!

Pg 4

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

------------------------------------------------------------------------------------------

FROM: 10579062
TO: Dolphin, Michael; Johnson, Bill
SUBJECT: Cons Brief 3 -- MSSD and OKND
DATE: 05/21/2026 10:17:53 AM

   *    II.   STILLEY IS ENTITLED TO REASONABLY PROMPT CONSIDERATION OF LITIGATION AFFECTING
           HIS LIBERTY INTERESTS

Stilley is trying to provide a benefit to both the Courts to whom this pleading is directed. How pray tell can a judicial officer claim that it is providing a "prompt" decision within the meaning of the applicable rule, when the apparent intent is to simply stonewall for MORE THAN 7 MONTHS, then claim that its "game over" because 2255 is about liberty and the government has gotten its pound of flesh, right down to the last ounce?

Stilley has already told Judge Hill that the 2255 rules GENERALLY prevent Stilley from a 2241 habeas attack on his criminal judgments BUT SUBJECT TO AN IMPORTANT EXCEPTION. See page 16 of OKND Dkt. 854 for the full version. The short version is that if it appears "...that the remedy by [2255] motion is inadequate or ineffective to test the legality of his detention," Stilley has another option. In that case Stilley is entitled to plead his attacks on the validity of his criminal judgments pursuant to 28 USC 2241, the customary habeas corpus proceeding not in the court of conviction, (in this case OKND) but rather in the court of detention (in this case MSSD).

Thus this brief to both courts. Stilley has less than 70 days to his Good Conduct Time (GCT) release, in other words to the point at which the DOJ-FBOP has NO OPTION except to unconditionally release him.

If Judge Hill is willing to do her job promptly, thoroughly, and honorably, that's fine, let her do it. However, after more than 5 months with no activity, we're past the point of assuming regular proceedings, fair consideration, and honest rulings on the issues properly presented to the Court. We'd need at least a hearing, at which time Judge Hill can explain what she intends to do, and when. Thus far she has neglected and failed to issue a scheduling order -- which would IPSO FACTO presume an intention to provide rulings on SOME MEANINGFUL SCHEDULE.

If Judge Wingate can't or won't provide an honest hearing and honorable rulings on the questions properly presented, for whatever reason(s), that should be stated as well. As of even date, Judge Hill has squandered 5 months out of just over 7 months. If the remaining time of just over 2 months isn't enough for Judge Wingate, he should state that conclusion. At that time the question arises. Is Judge Wingate -- or any other proper judicial officer -- willing to grant release pending litigation of the habeas proceedings? If so, that takes the "spin off the ball." If release is granted, the litigation can proceed on a more relaxed schedule.

Nothing herein should be construed as an implied waiver of speedy trial in proceedings in Crawford County Circuit Court. However, Stilley has already shown that he has ENTITLEMENT to proceedings that would establish his innocence while establishing that all three federal criminal judgments against him are utterly fraudulent and VOID. The evidence lawfully gained from such proceedings should help the OKND and MSSD courts understand that the gig is up, and that dilatory tactics will not work any longer.

Judge Hill has already ruled to the effect that when a criminal judgment in one court is set aside, it cannot be relied upon in some other criminal proceeding. Brewer v. Drummond, 751 F. Supp. 3d 1246 (2024). Even if the second court has already acted, it must reverse itself to the extent necessary to ensure that punishment is not inflicted based upon an illegal criminal judgment. Id.

    III.   THE 2241 JURISPRUDENCE OF THE 5TH CIRCUIT IS A MANIFEST FRAUD

        A.  This Court's Ruling

Judge Wingate's SUA SPONTE dismissal of Stilley's 2241 petition is not just illegal, it is EMBARRASSINGLY illegal, and as will be explained later, the error CANNOT be harmless. In the first full paragraph on the 2nd page of the order, the Court says:

      The Fifth Circuit has addressed this same issue and found that an inmate's request for transfer
  to a halfway house or home confinement is not available in a habeas corpus petition. Maxwell v.
  Thomas, 133 F.4th 453 (5th Cir. 2025). In doing so, the Court reiterated that a habeas petition
  'is the proper vehicle to seek release from custody,' while a civil rights suit under BIVENS V. SIX
  UNKNOWN NAMED AGENTS OF FED. BUREAU OF NARCOTICS, 403 U.S. 388 (1971), is the 'proper

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

--------------------------------------------------------------------------------

vehicle to attack unconstitutional conditions of confinement and prison procedures.'" Id. at 454, (citing Melot v. Bergami, 970 F.3d 596, 599 (5th Cir. 2020) "The bright-line rule" of the Fifth Circuit "is that if a favorable determination of the prisoner's claim would not entitle him to accelerated release, then the proper vehicle is a civil rights suit." Id. (citation modified).

Here, Petitioner does not seek a speedier release from custody; rather, he seeks a transfer to home confinement.   Because "transfer to a halfway house or home confinement" "would not entitle Petitioner to accelerated release," a petition under Section 2241 "is not the proper vehicle." ...

B.    One 5th Circuit Panel is Not Allowed to Overrule the Decision of a Prior Panel

Both Maxwell and Melot are FLAGRANTLY ILLEGAL because they purport to overrule the opinion of another panel -- actually, in this case, a lot of panels, plus a lot of US Supreme Court precedents. Neither are within the realm of LAWFUL possibilities. Saying that neither a circuit nor a district court has the power to override the US Supreme Court hardly requires citation -- but the principle that one 5th Circuit panel can't override another panel does. See footnote 5 of Richardson v. Joslin, 501 F.3d 415 (5th Cir. 2007); "If ROYAL stood for the proposition Richardson suggests, it would violate "the firm rule of this circuit that one panel may not overrule the decisions of another." United States v. Taylor, 933 F.2d 307, 313 (5th Cir. 1991).

In Coleman v. Dretke, 395 F.3d 216 (5th Cir. 2004), (Coleman I) a 3 judge panel granted habeas relief to a state prisoner who was deprived of halfway house and/or other reduced security confinement. A failed attempt was made at EN BANC review. Circuit Judge Edith H. Jones -- joined by judges E. Grady Jolly, Smith, Barksdale, Garza, DeMoss, and Clement issued a dissenting opinion attacking the panel's opinion.  Coleman v. Dretke, 409 F.3d 665 (5th Cir. 2005) (Coleman II)

Why didn't seven judges override three? Because as we see from the opinions on denial of rehearing, a majority of the judges in active service DID NOT vote for rehearing EN BANC. Because EN BANC hearing was not granted, even a 2-1 majority on the panel can announce a rule that every judge on the court is duty bound to respect.

Judge E. Grady Jolly joined the dissent in Coleman II. He was also on the panel that issued the PER CURIAM in Cheek v. Warden, 835 Fed. Appx. 737 (5th Circuit 11-24-2020) -- which cited and followed the rule of Coleman II. Here are the key takeaways. First, a court can split a complaint and deal with the matters properly before it. Second, "Cheek is seeking a change in his physical confinement when he requests that he be moved to home confinement..." Third, "Cheek's request for RELEASE TO HOME CONFINEMENT (emphasis added) in the context of a global pandemic was properly brought as an application for writ of habeas corpus under Section 2241 because a favorable ruling from the district court would accelerate his release."

Fourth, this was done despite the fact that the district court below had dismissed for lack of 2241 jurisdiction prior to a response by Respondent. Fifth, the Cheek PER CURIAM cites Melot v. Bergami but PLAINLY does not acknowledge anything in that case that would deny it 2241 jurisdiction. Sixth, Cheek didn't supply a denial from the BOP, or even proof that they considered his claim. Seventh, assignment to home confinement under the authorities presented is a discretionary decision left to the BOP and the Attorney General, thus the judiciary cannot supply any relief. Section 2241 (in this context at least) requires proof of violation of 1) the US Constitution, or 2) a federal statute, or 3) a treaty of the United States.

Pg 6

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

--------------------------------------------------------------------------------

FROM: 10579062
TO: Dolphin, Michael; Johnson, Bill
SUBJECT: Cons Brief 4 -- MSSD and OKND
DATE: 05/21/2026 10:18:14 AM

This is logical thinking. The CHEEK per curiam said the line between 2241 and 1983 claims is "blurry," and that "...we try to clarify, at least a little, today." This was done despite the fact that the CHEEK PER CURIAM opinion was unpublished. Judges can teach even when the law is settled such that there is no need for a new precedential opinion.

The fact that a claim for release TO supervised release is cognizable under 2241 is too well established to require citation to authority. However, BOTH halfway house AND federal supervised release are themselves "custody" within the meaning of habeas law, such that an action to terminate or reduce either halfway house or supervised release is cognizable under 2241. Footnote 1 of Wottlin v. Fleming, 136 F.3d 1032 (5th Cir. 1998); Ojo v. INS, 106 F.3d 680, 681 (1997).

      C.   A Quantum Change in Custody is Sufficient For Habeas Jurisdiction

Why? Because a "quantum change in the level of custody" is recognized by both US Supreme Court and binding 5th Circuit cases as "permissible habeas relief." Indeed, release from prison to NO CUSTODY WHATSOEVER is a comparatively rare outcome in a 2241 habeas case. Most of the time the relief sought and/or granted will be a "quantum change in the level of custody," to a custodial level that still triggers the protection of habeas.

      D.   Recent 5th Circuit Decisions on the Subject are Deceitful and Illegal,
            Have no Lawful Force, and Must be Exposed and Repudiated

Judge Wingate's Order of Dismissal cites only two published cases, Maxwell v. Thomas, 133 F.4th 453 (5th Cir. 4-3-2025) and Melot v. Bergami, 970 F.3d 596, 599 (5th Cir. 2020) before Davis, Edith H. Jones, and Willet, written by W. Eugene Davis. Both involve pro se incarcerated inmates, whose litigation capacity was stomped out to the best of the DOJ-FBOP's abilities, just like Stilley's litigation capabilities. The probability that the question of 2241 jurisdiction was briefed or argued -- by anyone, at any level, on either decision -- is vanishingly small. That much is clear from reading the decisions.

The seed of Melot's inevitable demise can be found in two crafty sentences at page 599:

> ... While an ARGUMENT CAN BE MADE that the Program [Elderly Offender Home Detention Program]
> allows for "release" from institutional custody, we determine that Melot's claim involves his
> conditions of confinement and is MORE PROPERLY brought as a BIVENS action. Even though
> Melot's claim is not cognizable under Section 2241, because Melot is proceeding pro se and
> because we heretofore have not had occasion to determine whether prisoner claims
> challenging the denial of participation in the program should be asserted as civil rights claims,
> we liberally construe Melot's petition as asserting a BIVENS civil rights claim.
> (Emphases added)

Judge Davis DID NOT in the first sentence say that 2241 jurisdiction is absent! Such a claim is CONSPICUOUS BY ITS ABSENCE. Judge Davis stated a bare unsupported theoretical opinion that it is "more properly" brought as a Bivens action. That's fair notice that NOT EVEN JUDGE DAVIS believes that Bivens is the SOLE procedural vehicle in such cases!

In the second sentence he says that the three panel judges are gonna be really nice and cool and just "liberally construe" the petition as a Bivens action. It's highly unlikely the panel held oral argument. Melot almost certainly didn't have to say "OK" or have to pay the $405 (or $350 for destitute prison inmates granted IFP) for a Bivens action. Judge Davis then disposes of the case by stating, quite correctly, that the Elderly Offender Home Detention Program does not give any inmate any enforceable rights.

The first clause of the second sentence should not fool anyone. That's 1) not a declaratory statement, 2) if declaratory it would contradict the first sentence's conclusion that such claims are "more properly" (as opposed to exclusively) brought under Bivens, and 3) if the deceitful introductory clause is left off, the second sentence still says the same thing.

To the extent that it's possible, Maxwell is even worse. It's a PER CURIAM decision, and W. Eugene Davis is on the case. The opinion is 3 paragraphs long, 4 if you count the single sentence "The judgment of the district court is AFFIRMED."

It's another Elderly Offender Pilot Program case. We know that only from reading the sole footnote in the case, which

Pg 7

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

--------------------------------------------------------------------------------

acknowledges CHEEK and admits that CHEEK is in irreconcilable conflict with the Maxwell decision. This anomaly is blithely waved off with the observation that CHEEK is unpublished -- as if the lack of publication 1) justifies inconsistency, and 2) overrides all the binding caselaw cited by CHEEK in support of its well reasoned decision.

The Maxwell DISTRICT COURT dismissed for failure to exhaust administrative remedies. The 5th Circuit panel PER CURIAM opinion 1) dodged that issue, and 2) ignored the fact that the Elderly Offender Home Detention Program statute conferred no enforceable rights, and 3) declared that Section 2241 is "not the proper vehicle."

Note the progression. Melot says that a statute that confers no vested or enforceable right to home confinement is nevertheless "more properly" brought under Bivens, with a "sleight of hand" clause to make unsophistocated readers think Judge Davis immediately contradicted himself to the great harm, detriment, and prejudice of Stilley and others similarly situated. The Maxwell PER CURIAM then claims that a right to home confinement IPSO FACTO forces a federal inmate to pursue it via Bivens.

On the precise issue relied upon to affirm the dismissal of Maxwell's habeas petition, the PER CURIAM relies upon precisely one page of one case. That would be page 599 of Melot. However, as reproduced above, Melot says that actions such as the one Maxwell brought are MORE PROPERLY brought as Bivens actions. That's a tacit admission that pursuing such cases via habeas is NOT PRECLUDED.

The FIRST LISTED CASE cited in support of the conclusion that "2241 is not the proper vehicle" is UNPUBLISHED! It is furthermore UNAVAILABLE to inmates in federal custody -- it's not on our piece of garbage legal research software. It's a 2023 case, there is no good reason it should not show up on DOJ-FBOP servers, for inmate access. Nevertheless, the last sentence of the sole footnote says "...we follow MELOT under the rule of orderliness."

It is the height of chutzpah to decline to follow a well-reasoned unpublished case BECAUSE ITS UNPUBLISHED, while simultaneously citing an UNPUBLISHED case to which inmates have no access, as your LEAD AND BEST CASE, in support of the panel's decision.

It is a monumentally bad idea for an appellate court to decide a case on a jurisdictional issue with no briefing whatsoever, which is almost certainly the case here. But for the BOP's obstinate refusal to allow Stilley access to PACER (Public Access to Electronic Court Records) Stilley would remove all doubt. But the idea gets even worse when such a panel relies on PRECISELY ONE arguably binding opinion -- and that one AFFIRMATIVELY FALSIFIES the foundation of the Maxwell decision. Fifth Circuit rules prohibit one panel from overruling the decisions of another panel. The Maxwell PER CURIAM attempts to SUB SILENTIO overrule a whole line of 5th Circuit case law, plus a plethora of US Supreme Court authority.

It gets exponentially worse when one of the judges on the Maxwell panel is ALSO the AUTHOR of the dissent in Coleman II. The three judges on the Melot panel are 1) W. Eugene Davis, 2) Edith H. Jones, and 3) Willett. Davis is also on the Maxwell panel, which apparently used the PER CURIAM trick so nobody would have to affix their name to such a constitutional abomination.

Edith H. Jones was the author of the dissent in Coleman II. In that dissent she plainly confesses that her opinion is a dissent because a majority of the judges in active service didn't vote for EN BANC rehearing. Six other judges joined her dissent. All seven knew they were on the losing team. Three panel judges prevailed over seven dissenters because they couldn't persuade a majority of the judges in active service to side with them.

Judge Jones clearly exhibited strong feelings in her Coleman II dissent. She wanted to ASSUME Coleman a sex offender on the basis of accusations, without a guilty plea, trial, or criminal judgment, and then deny him the benefits to which he was otherwise entitled -- if he wouldn't let the Texas criminal justice bureaucracy put his neck under the "sex offender" yoke after the fact.

She complained that the cause should not have been brought as a habeas proceeding. The state made that argument before the panel, but it was rejected. See footnote 2, 395 F.3d at 225. Specifically, the last two sentences of the footnote explain:

> ... Here, Coleman argues that the conditions placed on his parole were unconstitutional,
> and thus his failure to abide by those conditions should not have resulted in his reconfinement.
> Because he seeks release, Coleman correctly brought suit under the habeas statute. Id.

Pg 8

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

---------------------------------------------------------------------------------------------------------

FROM: 10579062
TO: Dolphin, Michael; Johnson, Bill
SUBJECT: Cons Brief 5 -- MSSD and OKND
DATE: 05/21/2026 10:18:29 AM

The dissent at page 674 helps us understand the position of Mr. Coleman by saying "Coleman was released on mandatory supervision on the condition that he reside in a halfway house until reemployed." Indeed, much of the dissent's arguments about 1983 vs. habeas read like something one might hear from the other side. However, the dissent apparently did at least indirectly contribute to legal clarity by criticizing the original opinion's grant of relief, causing the panel to explain its relief more thoroughly. Stilley will reproduce the last 3 paragraphs of the panel's supplemental opinion on denial of rehearing, Coleman II at page 670:

> Even if Coleman's challenge could be viewed as a condition of confinement case, the dissent's argument that he must sue under Section 1983 is premised on the notion that 1983 is the exclusive avenue by which to attack conditions of confinement. While the Supreme Court has held that certain claims must be brought under the habeas statute rather than 1983, NEITHER THE SUPREME COURT NOR THIS COURT has held that certain claims must be brought under 1983 rather than habeas. Docken v. Chase, 393 F.3d 1024, 1030 n.6 (9th Cir. 2004); see Prieser v. Rodriguez, 411 U.S. 475, at 499. In Preiser, the Court held that habeas is exclusive of 1983 in certain situations because the habeas statute is more specific than 1983. Prieser, 411 U.S. at 504 (Brennan, J., dissenting) ("Even under the [majority]'s approach, there are undoubtedly some instances where a prisoner has the option of proceeding either by petition for habeas corpus or by suit under 1983.").

> III.   CONCLUSION

> For the reasons given in the panel decision, Coleman v. Dretke, 395 F.3d 216 (5th Cir. 2004), and because the sexual offender conditions of Coleman's mandatory supervision impacted his liberty interest and were imposed without due process, the revocation of his release on mandatory supervision is set aside.

> The petition for rehearing is denied. The mandate shall issue instanter, remanding to the district court with instructions to issue the writ to order Coleman's release UNDER ITS ORIGINAL TERMS unless the state promptly conducts further proceedings justifying Coleman's confinement pursuant to state law and consistent with the opinion of this court.
> (Emphases added)

The Coleman II panel opinion on rehearing lays to rest the idea that Melot's reliance (in footnote 7) on Carson v. Johnson, 112 F.3d 818 (5th Cir. 1995), which purportedly relies upon Orellana v. Kyle, 65 F. 3d 29, 31 (5th Cir. 1995) (per curiam) has any validity whatsoever. Mr. Orellana sought relief under 1983. The district court concluded 1983 relief was unavailable, but the appellate court approved Orellana's use of 1983. Authorizing a litigant to proceed under 1983 doesn't even IMPLY that such relief would NECESSARILY be barred if sought pursuant to habeas.

The Coleman II dissent didn't challenge the panel's conclusion that prior 5th Circuit decisions don't bar the use of 2241 even though some other authority might arguably provide relief. Indeed, the Coleman II dissent included a couple of paragraphs arguing that Mr. Coleman's case should have been brought as a 1983 action. On this particular issue the dissent cites to exactly one 5th Circuit opinion, namely Cook v. Texas Department of Criminal Justice Transitional Planning Department, 37 F.3rd 166 (5th Cir. 1994). The second sentence of Cook tells us the issue in that case, as follows:

> The issue presented is whether such a claim is cognizable under 42 U.S.C. 1983 or must instead be brought, after exhausting state remedies, as a habeas corpus claim under 28 U.S.C. 2254.

The Cook court agreed with the pro se plaintiff and remanded for reinstatement of the 1983 claims, the grant of some of the relief sought, and the opportunity to litigate other dismissed 1983 claims. Any consideration of whether or not his claims COULD HAVE been IN THE ALTERNATIVE pursued as a habeas action would have been, BY DEFINITION, dicta. The question of whether or not habeas was his EXCLUSIVE REMEDY was NECESSARILY answered in the negative when the Cook panel reversed and remanded for the reinstatement of his 1983 claims.

On the 1983 issue the Coleman II dissent cited four cases from other circuits, saying that all four had "addressed issues similar

Pg 9

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

--------------------------------------------------------------------------------

to those posed to this panel in 1983." That proves nothing whatsoever where, as there, the RELEVANT QUESTION is whether or not a party litigant ALSO had a right to plead a claim under an appropriate habeas statute. A state or local inmate is likely to be able to plead many if not most "habeas type" claims under 1983, so long as the claim does not run afoul of the rule in Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994), which essentially prohibits to use of civil litigation to make an end run around the limitations of criminal and/or habeas statutes and processes.

      E.    The Complete Denial of the Right to be Heard on a Material Issue is Never Harmless Error

The district court's SUA SPONTE dismissal of Stilley's 2241 petition clearly transgresses two separate but related concepts. First, Day v. McDonough, 547 U.S. 198, 210, 126 S. Ct. 1675, 164 L.Ed. 2d 376 (2006) requires that an inmate be provided with a "show cause" order prior to dismissing the inmate's habeas case on the basis of statute of limitations. The same principle is present here, because Stilley was given no right to be heard AT ALL prior to the dismissal of his petition. Furthermore, along this same line, a "complete denial of the opportunity to be heard on a material issue is a violation of due process, which is never harmless error." Republic Nat'l Bank of Dallas v. Crippen, 224 F.2d 565, 566 (5th Cir. 1955).

      F.    The Principle of Party Presentation Devastates the Credibility of Melot & Maxwell

Second, the principle of party representation requires courts to be disinterested and impartial arbiters of disputes properly raised and argued by the parties -- not "pet issues" a court decides to raise on its own. US v. Sineneng-Smith, 590 U.S. 371, 140 S. Ct. 1575, 206 L. Ed. 2d 866 (2020). As Day makes clear, there are limited exceptions in which a court may raise certain issues in certain contexts, for example statute of limitations in 2255 actions, PROVIDED the affected party has a fair opportunity to be heard on the issue.

    IV.    THE PROFFER OF RELIEF UNDER BIVENS IS A DECEITFUL FOIL

That's not the case here. This Court proposed 42 US 1983. That's not just a weak theory, it's an utterly lost cause. It is as a practical matter a swindle of a federal inmate's $405 filing fee ($350 for indigents). Consider the following facts derived from a solitary report of Magistrate Judge Kevin F. McDonald of the District of South Carolina, Greenfield; Adams v. Warden Edgefield FCI, 2025 U.S. Dist. Lexis 142272 (SCDC 4-14-2025):

    1) Bivens itself was a claim of violation of the 4th Amendment when agents handcuffed a man in his own home without a warrant. The Bivens principle has been approved as to only two other fact patterns, as follows:
        A) a 5th Amendment due process clause claim for gender discrimination, and
        B) inmate claims under the 8th Amendment's Cruel and Unusual Punishment Clause against prison officials for failing to provide emergency medical care.

    2) The US Supreme Court has imposed such a highly restrictive analysis that during the last 42 years the Court has on 11 separate occasions declined to imply a similar cause of action for other types of alleged constitutional violations.

    3) The US Supreme Court has expressed regret over the Bivens cases, and also has demonstrated hostility to any further expansion of the Bivens principle.

    4) Bivens does not lie against an official capacity defendant, whereas the defendants in this case are all only and expressly designated as "official capacity" defendants.

As to the last issue, Stilley had to sue the defendants in their official capacities. Stilley requests release to home confinement. The respondent, for reasons both practical and legal, must "hold the keys to the detainee's cell door." Robinson v. Lopinto, 87 F.4th 652 (5th Cir. 2023) (Lexis page 9, Stilley's version does not have official pagination).

Pg 10

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

--------------------------------------------------------------------------------

FROM: 10579062
TO: Dolphin, Michael; Johnson, Bill
SUBJECT: Cons Brief 6 -- MSSD and OKND
DATE: 05/21/2026 10:18:48 AM

A Bivens claim by Stilley would almost certainly expose him to sanctions for filing a frivolous complaint. See e.g. Maysonet-Galarza v. BOP et al, 2025 U.S. Dist. Lexis 156736 (USDC TX 2025). Compare that to Woolsey v. Warden Milton Washington, 2025 U.S. Dist. 174474 (ALMD 8-8-2025), an extensive and well-reasoned opinion in which the district court rejected Respondent's argument for dismissal on jurisdictional grounds, rejected arguments that petitioner didn't have a protected liberty interest in the application of FSA time credits toward prerelease custody, but dismissed claims that the BOP incorrectly assessed petitioner's recidivism level due to documentation errors. The legal analysis supporting the disparate treatment of the latter two claims are well worth the time of anyone seeking an understanding of what FSA issues are logically enforceable in 2241 habeas, and which are not.

    V.    INMATES SEEKING FSA RELIEF UNDER 28 USC 2241 IN
           5TH CIRCUIT JURISDICTIONS GET RELIEF ALL THE TIME

Nobody doubts that Stilley has earned enough FSA time credits to be ENTITLED TO immediate release to home confinement, or that he was awarded them, or that local prison personnel recommended both halfway house and home confinement. Indeed, the Camp Administrator, Ms. Phillips, repeatedly visited Stilley in SHU, (Special Housing Unit, or jail for the prison) encouraging him to quit the hunger strike, explaining that FCC Yazoo City personnel had done nothing to interfere with his right to FSA home confinement.

Stilley truthfully responded that he wasn't accusing any FCC Yazoo City personnel of that specific offense. The most likely culprits, with respect to preventing Stilley from receiving the benefits of his already earned and awarded time credits and home confinement, are as follows:

    1) Either Stephen P. Friot, the judge in Stilley's criminal case, or Charles Anthony O'Reilly, who prosecuted the case. They're both justifiably nervous because they engaged in a secret EX PARTE hearing, in which an order was entered telling O'Reilly that the government need not respond to any of Stilley's motions, since the government would win regardless. Then Friot lied about it in open court, while O'Reilly sat like a lump on a log rather than telling the truth.
    2) Clinton J. Johnson, who is nervous because Stilley sent him a letter explaining how personnel in his office were stealing criminal restitution money by a fraudulent scheme to pretend that such funds were "unclaimed," or personnel in other US district court districts who play the same dirty tricks. See OKND 4:09-cr-43 dockets ## 780-786 inclusive.
    3) Persons angry over Stilley's abortion related litigation, (mainly focused on ensuring constitutionally guaranteed due process even for advocates of reproductive rights) a full discussion of which would unduly lengthen this pleading.

Friot, O'Reilly, and Johnson all have absolute immunity for acts in their official capacities. None of them officially have the keys to Stilley's cell door. How pray tell is Stilley expected to sue them under BIVENS? Relegating Stilley to BIVENS is for all practical purposes telling Stilley that a remedy, if any is to be had, will come after his GCT release 7-23-2026. Stilley has by incorporating the 2255 pleadings provided the MSSD Court with a fair summary of the facts pertinent to the first two paragraphs above. It is unnecessary to do more than that.

Judge Wingate burned nearly two months before dismissing Stilley's claims. Afterward Stilley lost nearly a week because our legal research computers weren't working. Stilley's current litigating capacity is a mere shadow of his native capabilities. Prison legal research computers are generally between 6 months and a year behind on legal decisions. Nevertheless, that which we have proves that the judges of this district don't believe that Stilley's petition was subject to summary dismissal.

How do we know this? First, inmates can search the term "FSA" in the opinion, and "Wingate" or "Greer Isaacs" or some other name in the "opinion by" box. Those searches bring up plenty of cases in which the judges of this district court have ordered a response by a warden named in a 2241 action seeking to enforce FSA time credits, gain eligibility to earn FSA time credits, etc. Plenty of those actions are dismissed as moot after a "release" of the inmate. They'll say the inmate was released on a date certain, and that the DOJ-FBOP inmate locator shows that they are no longer incarcerated. However, in virtually every case, that inmate was released to halfway house or home confinement.

Here's what happens. The respondent warden is ordered to respond. The warden's lawyer tells him that he's better off to give the inmate his due, lest an adverse decision be rendered and picked up by reporting services, whereupon other inmates become very interested in reading that opinion. Sometimes, the judge dismissing the mooted petition will actually say words to the effect "I would have denied the inmate's request for relief." In other words, the inmate gets time back on their clock because

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

--------------------------------------------------------------------------------

of the integrity or caution or strategic decisions of US Attorneys and their client prison wardens.

There's another big problem with stating (or even implying) that there is a jurisdictional bar to Stilley's petition. Stilley is a known quantity on this prison complex, to personnel and inmates alike. He helps other inmates draft pleadings. He is often offered access to their paperwork, including paperwork prepared by outside professionals. When they get an order requiring the warden to respond to their 2241 FSA petition, he's quite likely to be invited to read it and comment.

"This Court" can mean the court in the person of the Honorable Henry T. Wingate, or it can mean the institution, encompassing all the judges of the MSSD. That may be an important detail, if Stilley's 2255 is to be heard by "this court." Stilley wants a JUDGE who is firmly committed to following the law where it leads, with honesty, integrity, and reasonable dispatch.

Therefore, Stilley can be absolutely certain that "this court," by the latter definition, is well aware that there is no jurisdictional bar to Stilley's 2241 petition, and that inmates get their due on a regular basis, mostly without ever getting a written decision from a judge. There may or may not be magistrate reports and recommendations, or orders, helpful to persons who want to know the state of this area of law in the MSSD, as a practical matter. But it is undeniable that the 2241 petitions put a lot of inmates in halfway house, then home confinement, literally years before their GCT release date. At that time they have full access to legal research and writing tools, employment to the extent of their real economic value, access to family, friends, comfortable beds, good food, medical and dental care, real religious services, and a host of other things that make life worth living.

But that's not the worst of it. No, not even close. We now live in a world of artificial intelligence (AI). Stilley is now less than 65 days to GCT. At that point in time he will be able to prepare charts, summaries, and lists, to show exactly what "this court" (whether that term is a person, the MSSD, or the district courts of the 5th Circuit) have done when faced with a claim such as Stilley's. The COMPLETE denial of due process today will do a monumental amount of damage to the public reputation of THIS COURT tomorrow. Stilley still retains his 1st Amendment right to speak. As for the "media contacts" assigned as a reason to steal Stilley's wages, Stilley has the names and the contact info. Those journalists might wish to know that an OFFICIAL REASON Stilley continues to languish in federal prison is -- taking their calls and answering their questions! Such punishment will necessarily have a chilling affect on the 1st Amendment protected speech of all but the hardiest individuals.

The foundation of Melot and Maxwell can be summed up in this way. Federal prisoners seeking FSA remedies are deceived and coerced into using a $350 BIVENS action instead of a $5 habeas petition, to pursue the same result. Any federal inmate who falls for the ruse has lost 1) his filing fee to boilerplate dismissal orders and judgments that AI can generate almost instantly, and 2) his very real and material chance for partial or even complete success pursuant to habeas proceedings.

CONCLUSION

The dismissal of Stilley's 2241 petition was unlawful. The 2241 petition should be reinstated. All relief sought in all Stilley's motions filed in his 2241 or 2255 petition cases should be promptly granted. The public reputation of the federal bench and bar demands no less.

Pg. 12

TRULINCS 10579062 - STILLEY, OSCAR AMOS - Unit: YAZ-G-A

-------------------------------------------------------------------------------------

FROM: 10579062
TO: Dolphin, Michael; Johnson, Bill
SUBJECT: Cons Brief 7 -- MSSD and OKND
DATE: 05/21/2026 10:19:03 AM

By: _____        5-21-2026
Oscar Stilley 10579-062                    Date
FCC Yazoo City Camp
PO Box 5000
Yazoo City, MS 39194-5000

### PRISON MAILBOX RULE CERTIFICATE OF SERVICE

Oscar Stilley by his signature above declares under penalty of perjury pursuant to 28 USC 1743 that on the date stated above he placed a copy of this pleading in the prison outgoing mail receptacle, with sufficient 1st Class Postage attached, addressed to the clerk of the court for filing and service via CM/ECF. This prison does not have a legal mail system. Filing in the OKND will be done electronically.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULES CONCERNING PLEADING FORMAT AND LENGTH

This pleading was prepared on Trulincs at a cost of $3 per hour and 15 cents per printed page because Stilley has no current access to a word processor or other means of drafting and meaningfully editing a legal pleading, in this prison. This is true even though the Education Department of this prison has primitive word processors such as Forte or Neosmart, because inmates aren't allowed to use those machines for legal work. Stilley does not have access to local district court rules, and thus has to go on memory and/or guesswork. There are 12 countable pages to this pleading, but many of the pages use only about half the page because Stilley had to allow for the potential need to edit without spilling over to a third page. Stilley has no way to know the length of the pleading when it is placed into a more reasonable and logical format for electronic filing. If Stilley's efforts fall short in any way, he most respectfully requests notice and opportunity to cure.

Pg 13